1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

10
11
12
13
14

| | |
|---|---|
| ELIZABETH HIGHTOWER SABOL | ) CV 12-08284-SH |
| Plaintiff, | ) |
| | ) |
| v. | )MEMORANDUM DECISION |
| | )AND ORDER |
| CAROLYN COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

15
16
17
18
19
20

21

## I. INTRODUCTION

22      This matter is before the Court for review of the decision by the Commissioner of

23  the Social Security Administration ("Commissioner") denying Plaintiff's application for

24  Supplemental Security Income ("SSI") under Title XVI of the Social Security Act

25  ("SSA"). 42 U.S.C § 1381 et seq.  Pursuant to 28 U.S.C. § 636(c), the parties have

26  consented that the case may be handled by the undersigned.  The action arises under 42

27  U.S.C § 405(g), which authorizes this Court to enter judgment upon the pleadings and

28  transcript of the record before the Commissioner.  Plaintiff and Defendant have filed their

pleadings and Defendant has filed a certified transcript of the record ("AR").  After reviewing this matter, this Court concludes that the decision of the Commissioner should be affirmed.

## II.  PROCEEDINGS

In the instant case, Plaintiff Elizabeth Hightower Sabol ("Plaintiff") filed an application for SSI benefits on July 23, 2009, claiming an inability to work since December 1, 1995.  (AR 148-154).  Plaintiff's application was denied on January 24, 2010.  (AR 93).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on December 16, 2010.  (AR 45-69).  Following the hearing, the ALJ rendered an unfavorable decision on March 14, 2011, finding that while Plaintiff had severe impairments (fibromyalgia, obesity, and degenerative disc disease of the lumbar spine), she was not disabled.  (AR 21-38).  Plaintiff then requested that the Appeals Council review the decision.  Plaintiff provided the Appeals Council with an additional medical record, a Fibromyalgia Disease Residual Functional Capacity Questionnaire ("Fibromyalgia  Questionnaire")[1] prepared by treating physician Dr. Joshua Dworetzky on May 25, 2011, which the Appeals Council made part of the record. (AR 5, 379-83).  The Appeals Council denied Plaintiff's request for review, stating Plaintiff's arguments and the Fibromyalgia Questionnaire did not "provide a basis for changing the Administrative Law Judge's decision."  (AR 1-4).

Prior to the ALJ's 2011 decision, Plaintiff had applied for SSI benefits on two previous occasions.  Plaintiff's first application resulted in an unfavorable decision in 1996.  (AR 24).  Plaintiff's second application, filed on May 19, 1998, ultimately resulted

---

[1]    The Fibromyalgia Questionnaire indicated, inter alia, that in an eight-hour working day Plaintiff: would be able to sit less than two hours and stand/walk for less than two hours; would need to walk every ten minutes for ten minutes at a time; would need to take unscheduled breaks in an eight-hour working day "frequently"; and would have a marked limitation in the ability to deal with work stress.  (AR 381-382).  Further, in a competitive work situation, she could "never" lift and carry more than ten pounds, and could continuously sit and stand only for fifteen minutes at one time.  Id.  Moreover, Plaintiff was noted to "frequently" experience symptoms "severe enough to interfere with attention and concentration."  (AR 381).

1   in an unfavorable decision in 2000.  (AR 24, 75-90). That decision was not appealed and
2   became final.  (AR 24).

3      Plaintiff makes two challenges to the ALJ's 2011 decision denying benefits.
4   Plaintiff alleges that the ALJ erred in: (1) failing to properly determine, in light of the
5   Fibromyalgia Questionnaire, Plaintiff's Residual Functional Capacity ("RFC")[2]; and (2)
6   failing to provide clear and convincing reasons for finding Plaintiff's testimony not
7   credible.

8      For the reasons discussed below, the Court finds that Plaintiff's first and second
9   claims do not have merit, and accordingly, affirms the decision of the Commissioner

10

11                          III. DISCUSSION

12  ISSUE NO. 1:

13      Plaintiff asserts that Dr. Dworetzky's opinion as stated in the Fibromyalgia
14  Questionnaire was material, and would have likely changed the ALJ's RFC finding.
15  Defendant responds that such evidence would not have changed the ALJ's RFC finding.

16      In his decision, the ALJ found that Plaintiff had the following RFC: "[Plaintiff] has
17  the residual functional capacity to perform medium work[3] as defined in 20 CFR
18  416.967(c) except that she cannot climb ladders, ropes, or scaffolds, she may frequently
19  balance, stoop, kneel, crouch, and crawl, and she cannot be exposed to extreme cold,
20  heights, or dangerous moving machinery." (AR 31). The ALJ's determination was
21  supported by the following: the opinion of consultative examining physician, Dr. Seung
22  Ha Lim (see AR 274 [his December 28, 2009 report determining Plaintiff "would be able
23  to sit for 6 hours in an eight-hour day with appropriate breaks" and that she could "lift

24

25      [2]   The RFC is "the most [a claimant] can still do despite [his or her]
26  limitations." 20 C.F.R. § 416.945(a)(3) (West, WestlawNext 2013).

27      [3]   Medium work is defined in 20 CFR § 416.967(c) (West, WestlawNext 2013)
28  as "lifting no more than 50  pounds at a time with frequent lifting or carrying of objects
    weighing up to 25 pounds."

and/or carry 50 pounds occasionally and 25 pounds frequently"]); the opinion of State Agency medical consultant Dr. F. Wilson (see AR 292 [his January 14, 2010 Physical Residual Functional Capacity Assessment determining Plaintiff could occasionally lift and/or carry fifty pounds; and in an eight-hour workday with normal breaks, Plaintiff could stand and/or walk for a total of about six hours, and sit for a total of about six hours]); the opinion of consultative examining physician Dr. Ernest A. Bagner III (see AR 269 [his December 23, 2009 psychiatric evaluation, concluding that while Plaintiff would have "mild to moderate limitations handling normal stresses at work," she would have "no limitations completing simple tasks"]); the opinion of State Agency medical consultant Dr. R.E. Brooks (see AR 280 [his January 13, 2010 psychiatric report indicating Plaintiff's mental impairment was "not severe"]); and progress notes from Plaintiff's treating physician Dr. Joshua Dworetzky, as well as those from other physicians who treated Plaintiff, which were all referenced by the ALJ (See AR 240-265). See 20 C.F.R. § 416.945(a)(3)(RFC assessment is based on "all of the relevant medical … evidence").

The RFC determination was also supported by the finding that Plaintiff's testimony about the severity of her symptoms was not credible, as shown by: Plaintiff's apparent 3,000-mile trip to Belize by car; a suspicious onset of auditory and visual hallucinations not otherwise previously reported; a questionable treatment regimen, with Vicodin appearing as the "only treatment modality"; and a "very poor work history," where Plaintiff had zero earnings for almost thirty years.  (AR 33-34, citing 75-90, 155-161, 235, 240-265, 266). See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2005); SSR 96-7p, 1996 WL 374186.

Here, the issue is whether the new evidence, the Fibromyalgia Questionnaire, was material.  New evidence is material when it bears "directly and substantially on the matter in dispute."  Ward v. Schweiker, 686 F.2d 762, 764 (9th Cir. 1982).  Additionally, to meet the materiality standard, Plaintiff "must … demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative

hearing." <u>Mayes v. Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001) (articulating materiality standard when new evidence is presented).

Although the Fibromyalgia Questionnaire is from Plaintiff's treating physician and should thus be given great weight, <u>see</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)(holding "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant"), and although the Fibromyalgia Questionnaire bears "directly and substantially" on Plaintiff's claim, Plaintiff has not demonstrated there is a reasonable possibility this new evidence would change the outcome of the administrative hearing.

First, the limitations as expressed in the Fibromyalgia Questionnaire were similar to the limitations expressed by various treating physicians, including Dr. Dworetzky, in their treatment notes. (<u>See</u> AR 312 [on October 22, 2010, Dr. Dworetzky described Plaintiff's chief complaint and symptoms as follows: "Chief complaint: back pain – radiating to legs; difficult to sit or stand for prolonged [].  Pain does not improve with walking"], AR 341 [on February 11, 2010, Dr. Dworetzky described Plaintiff's chief complaint and symptoms as follows: "Chief complaint: Medication request; spent some time with her grandchildren which exhausted [Plaintiff]"], AR 242 [on August 5, 2009, Plaintiff stated to one of her treating physicians that "rest and lying down" helped to alleviate her pain).  The ALJ already considered these limitations in making his RFC determination.  (<u>See</u> AR 34-35).

Second, the opinion in the Fibromyalgia Questionnaire does not differ in certain respects from the Plaintiff's testimony at the hearing. (<u>See</u> AR 34, citing AR 55 [Plaintiff testified that she could only lift "very small items, such as a small ashtray"], AR 32, citing AR 55 [Plaintiff testified she could not focus when watching television]).

Third, Plaintiff's testimony at the hearing was inconsistent with the Fibromyalgia Questionnaire.  (<u>Compare</u> AR 59, 61 [Plaintiff's testimony about a trip taken to Belize in 2009 and a second trip by car that she was supposed to have taken in 2010] <u>with</u> AR 381 [Dr. Dworetzky stating that in an eight-hour working day Plaintiff would: need to walk

every ten minutes for ten minutes at a time; and be able to sit less than two hours and stand/walk for less than two hours]; and AR 48 [Plaintiff's testimony about working as a companion to an elderly woman, where the woman would "have [Plaintiff] read to [her] ... just sit and let [the woman] talk to Plaintiff"] <u>with</u> AR 381 [Dr. Dworetzky stating that Plaintiff "frequently" experienced symptoms "severe enough to interfere with attention and concentration"]).

Because the new evidence is not material, this claim fails.

<u>ISSUE NO. 2:</u>

Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting her testimony regarding the severity of her symptoms. Defendant responds that the ALJ provided valid reasons based on substantial evidence for finding Plaintiff not fully credible.

To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: "[the claimant's] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, ... [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997). Moreover, the ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the hearing on December 16, 2010, Plaintiff testified about her work history, fibromyalgia symptoms, daily activities, medications, and travel. (AR 46-62).

Here, the ALJ stated clear and convincing reasons for rejecting Plaintiff's testimony about her symptoms, <u>see</u> <u>Smolen</u>, 80 F.3d at 1281, specifically identifying the particular evidence which undermined her testimony, <u>see</u> <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001).

First, the ALJ discredited Plaintiff's testimony based on her "conservative and ... questionable" treatment history, noting that she had "only received routine treatment." (AR 33-34).  As noted by the ALJ, Plaintiff claimed to suffer from various maladies including headaches, vertigo attacks, and nervousness/anxiety, and yet appeared to only use Vicodin as her sole treatment modality, despite allegedly being recommended supplemental Vitamin D; Plaintiff testified to not "follow[ing] her doctor's orders with respect to [Vicodin's] usage"; Plaintiff "refused" to see a pain specialist, to whom she was referred by her treating physician; and Plaintiff did not seek psychiatric treatment for her alleged auditory and visual hallucinations. (AR 32-33, citing 52, 58, 60, 240-65).

Second, the ALJ discredited Plaintiff's testimony because of numerous inconsistencies in her testimony regarding her symptoms, including, among other things: Plaintiff testified that it was hard for her to sit, and hence travel anywhere, and yet stated she had been planning to go on a trip to Belize; Plaintiff testified to a car trip she had taken to Belize the year prior, which did not comport with Plaintiff's allegations of debilitating pain; and Plaintiff testified to being a companion worker, a job that ended seemingly only because of the fact that her client had passed away, and not because of debilitating pain. (AR 34, citing AR 59, 61, 68 174).

Third, the ALJ discredited Plaintiff's testimony based on her lack of truthfulness. As discussed by the ALJ (AR 33-34), although Plaintiff previously filled out "five questionnaires with SSA" (AR 173, 188, 191, 205, 231), she conveniently reported the presence of auditory and visual hallucinations for the first time at her consultative psychiatric examination (AR 266); and at the hearing, when the ALJ asked Plaintiff for her passport to substantiate her claim of travel to Belize, Plaintiff tried to "avoid having to produce [it]," claiming she might have lost it even though the trip had been scheduled to have taken place prior to the hearing (AR 68).

Finally, the ALJ discredited Plaintiff's testimony based on her very poor work record.  The ALJ noted she had earned "nothing at all in 28 of the last 39 years since 1972," indicating that Plaintiff had "barely ever worked on a full-time basis." (AR 34,

citing AR 158).

Therefore, the ALJ set forth clear and convincing reasons for concluding Plaintiff lacked credibility.

IV.  <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

DATE: <u>June 25, 2013</u>

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE